The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. We're happy to hear argument in our first case. Mr. Rosado. Good morning, Your Honors. My name is Michael Rosado. I am the attorney for the petitioner in this case, Ms. Ruth Orellana. Your Honors, this is an appeal of a decision by the Baltimore Immigration Court as affirmed by the Board of Immigration Appeals, denying my client her request for asylum, withholding of removal, and protection under the Convention Against Torture. This case has a very limited range of issues, as there was. That's what I was about to ask you. What, what has already been established in this case? Your Honor, there was a stipulation at the trial level as to the viability of the social group in this case. Right. So the government's conceded that. That has been conceded. The only issue in this case is whether the government of El Salvador is willing and or able to protect Ms. Orellana. Now, with respect to this issue, Your Honor, there's two distinct and separate issues with respect to... You say the government's conceded everything else? Correct, Your Honor. And also... Well, when there's something they conceded, they say they want to, if it goes back, they want to change their tune. I'm sorry, Your Honor. Well, I said there's something they conceded that they want to back up on, like a social group. I think they want to change something. If they get it, if they have to do it over, they want to back off. They want to withdraw their concession on the social group. Do you remember the record saying that? I do not believe... Is there anything that they want to withdraw? We seem to be, you can't seem to hear us, so I'll talk really loud. Is there anything that they want to withdraw the concessions that they've made about? I have not seen any of that, Your Honor. Well, I'm sure the government will tell us. Correct. Now, Your Honor, the first issue the petitioner would like to bring up is what we consider to be legal error in the analysis made by both the IJ and the BIA. With respect to the analysis of government inability or unwillingness, there must be a separate, distinct analysis of both of those questions. First... Which questions? Is the government unwilling? Right. And or is the government unable? All right. There has to be some sort of rational explanation made by the trier of fact. This issue was fully briefed to the BIA. The BIA, in the petitioner's position, ignored the fact that the trier of fact, the immigration judge, had to make this analysis. So let me make it clear, it is your position that you must always be able to show both that the government was unwilling and unable to protect an individual? No, Your Honor, the opposite. The petitioner can show either. And what the IJ and the BIA have done in this case, they've conflated both as if what Your Honor just proposed, as if they have to show both. It's and or. So if the government could be willing but unable, they could be unwilling but possibly able, and the petitioner could show, could establish their claim under either scenario. And that's why, from a legal perspective, it's very important to make that analysis at the trial level so that if there is an appeal, as there is in this case, this court can then determine and understand the analysis made by the trier of fact or the BIA. Now, this is very similar, Your Honor, to a Ninth Circuit case that has been cited in our brief, and I'll briefly speak to that because it's a short case, but it's it speaks to this point. Madrigal v. Holder is very persuasive where they held that the BIA committed legal error because they only focused on the willingness of the government of Mexico to protect the individual. There was no analysis made as to the ability of the government to protect the individual. OK, that's a fair point. But are you conceding that there was willingness here, but not ability? We are we are not, Your Honor. Now, I thought your argument was there was neither. We would there is an argument to be made that the government showed a de jure willingness. That is to say, the government of El Salvador has established some sort of legal framework. It is clear from the record the petitioner was able to seek some sort of recourse before the courts. We would not concede, however, that there is a de facto willingness. And that goes to that is shown by the fact, for example, in 2006, the petitioner goes to the court, obtains a six month protection order. The record clearly shows that her abuser was notified that he must show up in July of that year. Three months later for a hearing. The petitioner shows up to that court, informs the court. My abuser has been threatening me and to withdraw this complaint, informing the court that issued its order. The order said is a criminal offense to violate such order. The court is informed of such such violation and they merely reschedule the hearing. They don't do anything about it. They don't hold the abuser in contempt. They don't attempt to have him arrested for violating its own order. So there is a de jure willingness by the system. However, when you delve into the fact that they didn't do anything at that point to attempt to enforce its own order, we would not concede that there's a willingness. For how long did this abuse continue? For how many years? Your Honor, the record indicates that the abuse commenced in the mid to late 1990s. And prior to the petition, prior to El Salvador establishing even a de jure legal system to attempt to protect her, she saw all kinds of she attempted all kinds of things to protect herself. She fled to her mother's home. She built a second property on their own property as a sort of mini bunker to escape his abuse. The record is very clear on that. Once she was informed by a shelter that there were no legal protections around 2003, that's when she attempted to seek these legal remedies in El Salvador. Unfortunately, her first experience, she reported the abuse to the court. The court did nothing. She did abandon that process. Now, the government would have us take that abandonment of the process as showing that she wasn't availing herself of the protections of the government. The same government that didn't do anything regarding her, her plight at that point. Your position is she asked the government. They didn't do anything. So she's not abandoning them. She's not abandoning. There is nothing to abandon if they're not protecting her. Now, so is that your basis for saying that's the reason she didn't return to court when she was ordered to do so? That that's that's part of the analysis that could have been made by the trial. It should have been made by the trial. In fact, this possibility that was never analyzed by the trial factor understood. And in particular, Your Honor, the trier of fact ignored the expert declarations in the record that give context to the experiences of the petitioner with this legal system that has been established in El Salvador. So what makes this case particularly well, these cases somewhat difficult on appeal is that our review is very limited and we must review for clear error. So even if we find that we would go differently and I would tell you this is a very difficult case, it's very, very tough facts in it. The question is not whether we would go with it is whether there is some clear error that compels us to reverse. And so so tell me, what is it that you say is clear error that requires reversal? That would go to the second issue. And aside from the legal error, which would warrant remand is that the noble legal error is the legal error. Or a clear no, Your Honor, a legal error would warrant remand. It's a factual error. It would be under the standard that Your Honor is stating. And that would be our second point, that when if the trier of fact had actually considered all of the evidence. The BIA even recognizes in its own this last decision, I believe, is the third decision. They recognize a contradiction in its decision. The BIA states, they begin to analyze in the second page of the opinion, the fact that the expert declarations seem to contradict the evidence cited by the IJ. They list out some of those contradictions, but then just merely state we see no, we discern no clear error. This, I'm not sure I understand your answer to Judge Wynn's question, which I think lies at the heart of this case, is what you're saying. There is both legal error, which we review under a different standard, a less we require less to get your appeal to succeed than to the factual error about the sufficiency of the evidence. We were arguing. So you have two. So your sufficiency of the evidence argument, we have to find that there was clear error in the way in the evidence here. But you maintain that the way in which the administrative agencies dealt with the legal question of whether the government was unwilling or unable was error. And that you regard as a legal error. Is that right? Correct, Your Honor. OK, I wasn't clear from that before your argument either. Correct, Your Honor. And that is correct. So that legal error is the first error. Now, that legal error, the petitioner believes, also leads to what the flawed factual analysis in this case. Or the flawed factual analysis is in support of the legal error, whatever. They don't consider in any way the inability of the government, given that she's been abused for over 10 years. She sought the help of the government. The trier of fact does not in any way address the fact that the abuser continues to abuse, continues to violate the orders, continues the pattern of behavior established for many years. Basically, this is a private actor that has been acting with impunity. There's a question that I want to ask you. It sort of goes to, puzzles me a little bit about the case. It's a domestic violence case. Now, to what extent do we look at the culture of a particular country in terms of issues of domestic violence? That they may be able, but there may be different norms and different standards by which they adhere to. We don't agree with. Do we impose our beliefs in that context? Or do we look at it from the context of the country in which the person is in? I believe it would impose our own view, Your Honor, in particular in the case of persecution based on gender. In this case, the particular social group is rooted in gender violence. And the expert declarations do go to what Your Honor is mentioning regarding the norms. And the question so far is gender bias. Do we look to determine what we would say that is? Or do we look to see what the country that she is in would say it is? We would look at what is happening in the country to understand whether, in this case, the nexus has been established. But if the nexus was an issue, we would look at what the country is doing with respect to their norms. Do they ignore women, for example, in these kind of situations? But I thought that I also thought that was a question. But haven't the party stipulated that her abuse qualified as persecution? Yes. Yes. So in this particular case, we maybe don't have to poke around and determine whether they have the same standards with respect to spousal abuse as we do. But further to the judge's question, though. Well, it goes to my also the question, if you stipulate this, to what extent does it make it to the precedence of this court? Because you can well see that if this is the way in which a country does something, that anybody who leaves from there under similar situations would be entitled to this type of remedy. Yes, Your Honor. And to follow up on your on the question, the cultural norms could also inform the trier of fact as to why there was an unwillingness or why there was an inability. So, for example, in El Salvador, the experts' declarations clearly delineate some of the cultural expectations and norms which some of the police operate under. So some of the police. Does your client have another location in El Salvador that she can go back to and be away from this person who is abusing her? No, Your Honor. And I don't want to speak out of turn, but I believe that was part of the stipulation as well, the internal relocation issue. Now, Your Honor, very quickly, Your Honors, very quickly before I move on, I just briefly want to address the Convention Against Torture. In this case, what the IJ did was basically bootstrap his analysis of the unwillingness and inability into the analysis of the Convention Against Torture, which we do concede there could be some of the facts, some of the questions of government willingness and inability could be the same as under the acquiescence standard under the Protection Against Torture. However, if the IJ decision is read, there is no actual analysis of the facts, in particular in light of the fact that after 2009, there were several refusals or events of non-help, which if analyzed under the standards of the Convention Against Torture, could be interpreted as acquiescence on the part of these officials, despite their previous help. So the IJ's reasoning is basically that, OK, she received some help in the past and that negates the refusals for help at the end of her life in El Salvador. And we do believe that this is a clear legal error not to make any separate legal analysis of the Protection Against Torture. So I briefly wanted to address that before my time ran out, because we do believe that sometimes the standards under the Convention Against Torture, they get sucked in by the analysis under the asylum and withholding standards. But there are two separate questions. And we do believe that the IJ and the BIA did conflate the issues. And that should also be reversed. Thank you very much. Thank you, Your Honors. You have some rebuttal time. No problem. We've all been there. May it please the Court. Rebecca Hoffberg Phillips on behalf of the United States Attorney General. What I wanted to first start off with is what you started off with, which is that in matter of AB, which was decided since the board decided this decision and since the government conceded the particular social group issue, the attorney general has said that DHS may not actually stipulate to a particular social group as a legal matter. And so therefore, backing off the stipulation. Yes, Your Honor. As my brief points out in the footnote toward the end of the argument, that if this court were to disagree with the bases relied upon by the agency, that it should remand for a determination of the other issues which would come into play. Under INS versus Baga Masbad, the Supreme Court has said that courts and agencies are not required to rule on matters that are unnecessary to the conclusions that they reach. In this case, they decided that that issue wasn't necessary at the time. But you're familiar with the law of the case, right? Your Honor, I mean, the law of the case doctrine. Well, but the law, I mean, that a prior court order would say I thought there was a stipulation. In this case, I understand the government's position going forward. Yes, I mean, in other cases, but I'm not sure you're not stuck with this on in this case. But in any event, that's kind of I mean, you can argue it. There's a doctrine of judicial estoppel as well. I mean, the government particularly can't speak with a forked tongue. Your Honor, there's been intervening precedent, which is usually a basis that would cause a change in the case of law, just like in any other case. Here we have an attorney general decision trumping board precedent and therefore any agreement that was reached to limit the issues in this case. At the time, they were focused on this issue because that was the issue that seemed the most obvious one to focus on in this case. You say to us that when a case comes up through the system and you have one attorney general or whatever and you agree and you make stipulations, then you get a change of things somewhere in the legal process. You then will come back to the court and say, no, we didn't mean what we said there. We don't stipulate. We don't agree to that anymore. Is that the way you say we ought to accept this? And when did this idea that you're not going to agree to the stipulations come up? Was it before this appeal or after the appeal was filed? Well, Your Honor, the attorney general's decision in matter of A.B. occurred, you know, while this case was already pending after the board's decision. Already pending on appeal? So, I mean, do you know when it was issued? So I think it was issued sometime toward the middle of the summer, I guess. Does that matter? Does it matter that the stipulation would be made after the matter is appealed? I'm sorry. Does it matter that the matter would go through the whole process and then on appeal, attorney general then seeks to get out of stipulation? Does that matter? It matters that the case law changed between the time that the government agreed to something and the time that... So you think stipulations are based on case law? Well, at the time, they weren't constrained and they were able to agree to something. When case law prevents that type of... What case law was it? A matter of A.B. Who made the decision? The attorney general. Well, that's not a... I'm sorry. The date is June 20. That was not a court. It was not even the I.J. or the B.I.A. It's the attorney general. He's the party here, right? So he changed his mind after he made the concession. That's what you're saying the sequence was. Well, Your Honor, in cases all the time, issues are limited and the government decides not to pursue certain issues, just like the agency decides not to decide certain issues or this court opts not to decide certain issues. It doesn't mean that when the case returns, that the court can't revisit an issue that wasn't required previously. Well, just suppose these were two private parties and there'd been a stipulation. And it, for one reason or another, gets reversed and goes back. They can't undo the stipulation. You would recognize that. So that's the situation. It sounds a lot like we're in, except that the attorney general of the United States is asserting, well, I can make new law and I can withdraw stipulations at will. And it seems very odd. He's not withdrawing a stipulation. He's withdrawing a board precedent upon which the stipulation was able. Well, but it is there's a stipulation that exists, right? I understand what you're saying, but they made the stipulation. That's why I'm saying going forward, you can argue whatever you want in other cases. But it seems to me in this case, you're sort of stuck with the stipulation. I hardly believe the other side had come in and said, we are not going to agree to our stipulation because we changed our mind. You, attorney general, would be so gracious and say, oh, yes, you can do that because we do that too. Well, it all depends on if the law, if the law would change what you're allowed to stipulate to. No thing to say something you stipulate. A stipulation by definition is different. That's something you agree. You didn't have to do it. It was more like an agreement. I mean, that's if you look at pages 300, it's around it's it's around 284, 300. I mean, that's where in the record that the government is basically saying, just to point out sort of what was said, it's basically about they go off the record and they say, you know, can you articulate your particular social group? And they come back on and basically, you know, the government says that they're not going to object as to the particular social group. What page is this? I'm sorry. This is page 285. 285. Yes. So, you know, petitioner's counsel says she she belongs to this particular social group of domestic relationships and then the position of the government. And then the government says no objections. So no, no objections, Your Honor, to to that particular social group. That's on page 285. Right. And then this government stipulates that this is a qualifying nexus is on the next page. And she says, yes, Your Honor. So it's a little bit. So what what we don't have here is the government saying, well, there's board authority now. And so I agree. So there's no invocation. You know, you kept saying to us, well, the law changed, but there's no invocation of law here. There's just a simple stipulation. But it was remanded specifically because of the particular social group, ARCG. But we're not dealing with a social group issue right now. Right. Right. But what I mean is that they were specifically that was the basis why it went back after the first board decision, because the particular social group law had evolved. And the government was agreeing that matter of ARCG exists at that point, whereas it was unsettled. Particular social group law was unsettled initially. And so there's been multiple decisions in this case. So they were specifically taking into account that board precedent. I think we understand your position. Yes, Your Honor. So I wanted to. So that was the first matter. The second matter is in terms of the unable and unwilling, in terms of what shows the ability and willingness. Willingness is investigation. It's willing to take reports. It's an interest. It's it's willing to take your complaint. Just to go back one second. You acknowledge you must show both. The government must show both. But actually, the petitioner, it's actually not the government must show both. I take that back. It's that the petitioner must show that the government is unable or unwilling. So it's her burden to show either. As the applicant, she bears the burden of proof. And I want to make that very clear. So please take back what I just said. It's not the government's burden. I got you. It's her burden. And that's what's really important about this case, because we need her to explain why the procedures, specifically the legal remedies that were offered to her, were not why she could not follow through with them as that demonstrated both a willingness and ability. Willingness is is willing to take the report and investigate. The ability comes from the protection order, the arrest, the criminal proceedings. See, they were wrapped into one in this case because the willingness went hand in hand with the ability in terms of the legal remedies that were offered to her. Well, but let's just go through these incidents. This record, I think, is incredible. When they arrested him. They told him not to leave the residence. She asked that they not leave the residence. And he said the court just told him not to come home when he is drunk. They also returned his machete to him. I mean, this record is replete with. Almost unexplainable conduct by the state. Your Honor, those were her terms of the agreement. I just want to make that clear. The court wanted the machete returned to him. That was her term. She agreed in this mediation order. As I pointed out in my brief, you have to read and this is on pages 568 of the record around there. Five five sixty seven that she agreed since all she wants. She entered the mediation because, quote, since all she wants is that he stopped threatening her and that when he's drunk, he not arrive home. So she's saying that she's that's what she wants. She didn't say that she wanted him to move out. She said, don't come home when you're drunk. This is her agreement. She called the police for protection, right? Yes, they came and arrested him. And then they tell her to go to family court. They bring her to the justice. This is 2009, the incident I'm talking about. They tell her to go to family court. Well, Your Honor, that's where it gets. And then she goes to family court. It's an hour long bus ride to family court. The court employees turn her away because they were too busy to issue a protective order. And then they sent her back to the police who don't offer her help and don't give her a reason why. I mean, I'm you know, the record better than I do. I wrote a good brief and an affair brief, I thought. But this is record just seems to me inexplicable. Your Honor, if I could just clarify some of those facts. So what she was told in that mediation order specifically, this is on page 568, that if she does not. What time was this incident? Oh, I mean, what year? 2009. I've done this. Yes. This is the 2009. This is January 13th, 2009 mediation order as a result of the arrest and following arrest and almost weeklong detention when she called the police arrest and detention prosecution for criminal charges of resisting arrest and a domestic violence component. At the hearing, she agreed to a mediation and she set forth the terms of that mediation. What page is you on now? This is page 568. And so what she did was agree to certain terms. She said, you know, this is how I want to handle my complaint. And the judge said, well, we can do it this way. We can have a mediation. And the judge warned her that if the accused does not comply with the accepted conditions, I'm reading right from the order, she will have to present herself before the court to notify it of the violation in order to have a special hearing. So she's being told that it's going to require a physical in-person presence to modify this order because she's agreeing to it. And if he doesn't follow it, then she has recourse. So her recourse was to ask for a special hearing. So we're never told. Why didn't she do what the order said she was supposed to do? She went back to a court. We're not sure what she told the court. We're not sure if she reminded the court about anything with her. And so why aren't we sure? Because in her testimony, she just says they didn't listen to me. So she says, well, we don't know what what she told them or how she explained her situation. We also don't know what effort she made to follow the rules of her own mediation order. And this is critical because we're not talking about absolute protection when we're talking about unable and unwilling. We're not talking about guaranteeing prevention of all harms. That's impossible. It doesn't even happen in the U.S. that way. Well, of course not. But we're talking about ability. Ability to do this. And yes, the ability here is in the form of criminal prosecution protection order. She went to the police over 12 times when they didn't arrive. Right. I mean, she's got a long history. And I'm going to be sure I understand this. The I.J. found her credible. Yes, but he but but he noted the lack of clarity and the confusion on page one of four of his decision to 10 years of this abuse, which he found credible. And I won't pick out you because you're a lovely young woman. I'm sure you never have been. But if a person was, you can imagine that they would be a little disoriented. Absolutely. Your Honor, there's no question that the government doesn't dispute that this is such a horrible circumstance and that she is extremely sympathetic and that it's absolutely terrible that she had to endure what she did. And as the law was changing and progressing, I mean, as I pointed out in my brief, there were reasons why in the beginning she wasn't reporting the incidents. The law was evolving. She was getting more support from women's groups and changes in the law that were allowing her to have a better ability to seek legal remedies. And so it's really only the later portion of her calls to the police that matter here, because even though she endured a lot of horrible circumstances, you have to look at what the response was under the more recent conditions to be very much of a response. When you look at what the IAEA did focus on the 2006 and 2009 episodes, there's a long history of this. And I just don't see that sympathy you were saying in terms of what is going on being reflected here. There's much more. And part of it, you can probably explain away in terms of she should have done this, she should have done that. But under the facts of this case, there's continual abuse that's going on for years and years and years. And when you get to that point, why is it not clear error to simply focus on 2006 and 2009? Well, Your Honor, actually, what I want to point out is what you mentioned earlier about the standard of review here, which is that there could be more than one possibility under substantial evidence in terms of whether the record compels the conclusion. The board, I think the sympathy is expressed here, first of all, in the IJ's decision. The first IJ even says, why don't you look into deferred action? And I actually asked opposing counsel before here, before this argument, if he had followed up and he had not, which is fine. But it long predates PD. And it's always been something that DHS has done. I'm not saying that it will do it. He has not asked. Well, Ms. Phillips, can I ask you something along these lines of my colleague? Have you been doing this a while, a couple of years? Yes, Your Honor. Have you ever seen a case like this before? Your Honor, I have not done this for 25 years and I've never seen a case like this before. I have not, Your Honor, I mean, I have not seen where the facts are a little closer here. And I agree with that. But what we have to remember here is that usually when I just when we talk about the home government being responsive or not, it's a case where the person hasn't gone or gone once and then nothing has never gone again. And we don't have, as Judge Wynn pointed out, years and years of abuse and years and years of her going to the police. Well, it's unclear, you know, up until the more recent times, it is a little bit unclear exactly, you know, what she said and what was done before that. She testified she went many times. Yes. And the IJ found her credible. Yes. And that's a little bit open, you know, that's a little bit of a less specific type of claim. I'm not I'm not saying that she didn't go many times. But the point here is that when you actually have legal remedies offered to you, we're talking about the unable and unwilling requirement. And so we're looking at ability and willingness. And and whether that's a harsher standard, you know, then, you know, maybe it could be. I mean, that's what we're looking for here. We're looking for ability and willingness. And when the court gives her remedies and she doesn't explain adequately on the record why she could not follow through with those remedies other than she went back to the court and they said to come back and. And it's an hour bus ride. I mean, she didn't say on the record. She's not gotten any satisfaction in years gone by. But, Your Honor, that's only one time that she made an attempt and she was told to create a special hearing. It's important that she can't just affirmatively say, I'm not going to follow the procedures that have been given to me. It doesn't show the inability and unwillingness that we're looking for. And the important thing is the standard of review and the fact that the general conditions are not so great there. The government doesn't dispute that it's not a good situation for domestic violence victims in general. What the board was making clear that the IJ did was that the general circumstances give way to the specific in this case. And so the fact that there's a little bit of competing background evidence, we have to look at the remedies she was offered and why she didn't follow through with them is not specifically adequately explained on this record. She didn't explain. I just, you know, anything other than, you know, I didn't go back because she believed it was. Write that down a little bit. Yes. She says that she went to the police many times and she gave a lot of testimony. And is it your position that that is not legally sufficient to show that you went to the police and there was not sufficient action? Well, it's a matter of what they did. Did they show the willingness and ability? I understand that. But but we have a showing that she went to the police and many times without getting relief in her position. And she's found credible. And I'm just not sure where you go from there. Well, you go with the fact that she was offered legal remedies as the law evolved. There were no remedies. Well, no legal system is perfect. I think as Judge Wynn pointed out before, sometimes we can't impose our standards of what we think a system should be, of how everything should be addressed. This is the legal system that they have. And as the AIJ acknowledged, it is an imperfect system that doesn't always deliver the results. But that isn't the inquiry here. The inquiry was whether she met her burden to show inability and unwillingness when on this record, she was offered legal remedies that she did not follow through with. And it's totally unclear in 2006 why she was given a protective order. I mean, that's complete ability. That's complete ability. That's exactly what you're looking for. You said along your argument, your time is up, so I'm taking my time and not yours, that you said that she could have applied for something that she hasn't yet applied for. What is that? Oh, I'm sorry, Your Honor. I was mentioning you were talking about a lack of sympathy on this record and the AIJ. And I can even tell you maybe what page it was on. He basically said something about, you know, that he was urging the government about deferred action. And, of course, as deferred action, deferred action as a member of the DOJ, you asked your colleague on the other side if he had asked for deferred action and he hasn't yet. But you could still do that. Is that correct? It's it's always been available. And I can't I don't mean to put that out there as I have not authorized. I understand. OK, yes. I was just saying in terms of the sympathy shown on the record. OK, thank you. Yes. Thank you so much, Your Honor. If the court has any other questions, rest on the brief. Thank you. Well, the government's position seems to be that this is in the United States of America and this government did enough and she didn't come back to them and she didn't follow some of the instructions. So what do you have to say about that? Your Honor, we're going to very strongly dispute this notion that there was no follow through. In 2009, she does obtain a daydrewer protective order from the government. We've acknowledged that subsequent to that protective order, she contacted the police for threats. She went to the court. Albeit one time she did go to court. She did. So this idea that that can be characterized as no follow through, I think lies what happened. I just don't I I don't even know how to explain how that doesn't match up with what she did in the record show. I think I understood the argument to be that she got the relief she wanted, that she signed on to in the arbitration or whatever it was, and then she didn't follow through. No, Your Honor, we recognize that there is a process in El Salvador. What our argument is that subsequent to that process where there was finally a glimmer of some sort of remedy and hope for her, finally, after over 10 years, she attempted to follow that. And the government is arguing there was no follow through. How can the government argue that when the facts show that she did attempt to go to the authorities once again, multiple times to the police? The police informed her you have to go to court. They somehow didn't recognize the previous court order. And at that point, she goes to court and they say, come back another day. If if the court is functional, if they have the ability to hear cases, if they have the ability to enforce their own orders, why tell her to go away? Well, she they said she she says they're too busy. Court was busy. And you're a busy court. I guess my rebuttal to the family courts are busy in the United States. They're busy. If this were a simple civil dispute where some John owes Paul ten dollars, I think that that that would be an adequate explanation. You're talking about a life and death situation where she's pleading for her protection for her life and for this government to say that we can turn away an individual in this type of case, I think is asking too much. Let me ask you something about the government plans to renege on the if it goes back to renege on the stipulation. Does that have any relevance to what we're doing here today? I think it does, Your Honor. And you think they can renege on the stipulation? I don't I do not think they can renege on the stipulation at all. Yes. And for several, you don't you don't think they can renege, but they plan to. And why isn't that irrelevant to what we have? Well, the reason they want to renege on this, Your Honor, is because matter of a B. Basically takes this government unwilling and inability standard and turns it on its head and uses the word condone, and it's cited in the government's brief. They're attempting to bootstrap this BIA precedent into this case without us addressing the issue either at the trial level or even the intermediate appellate level. So you're saying they're planning to renege. They want to renege in this case. Apparently, that's what they say. I thought she was saying that they don't want to renege unless it goes back. Then they plan to renege. It sounded to me, Your Honor, that they wish to do it now. And the reason for that is because this case, I don't think you're going to be able to renege anyway. I don't believe so, Your Honor. And even the government says that this law has changed. The law has not changed. If a fair reading of matter of a B does overturn a precedence, giving some sort of contours to the domestic violence, particular social group circumstance. But it doesn't preclude it. Matter of a B, if you actually read it, does not preclude an IJ from finding a particular social group. It just attempts to make the bar much higher. And, Your Honor, I even feel uncomfortable discussing this to the court because there has been no notice, no ability to fully brief this issue. And the government just wishes to throw that out there. Well, they put it in a footnote somewhere in their brief, didn't they? That's what she gave you, some notice in that footnote. Your Honor, I don't believe that was not one of the issues presented. And if. Well, then maybe it isn't relevant to what we have to decide. I don't believe so, Your Honor. If it goes back, they intend to renege on you, though. She made that clear. And I don't believe that should be allowed, Your Honor. And I don't think the court's point as to fundamental fairness. So could you pursue deferred action for your client here? Your Honor, deferred action and my time is almost up, but deferred action was a remedy that was available at during the previous administration as a policy basis as a matter of grace from the executive branch. It is not a judicial remedy. It is basically an exercise of grace and discretion by the government. This current administration fully reneged on a lot of the memorandums that established the parameters for the exercise of such. So you think it would be an exercise in futility to ask for deferred action? Is that what you're saying? The government had this administration has reneged on the contours of their previous deferred action policy. There's some stays in effect of that. So the court proceeding. Yes, Your Honor, there is a stay. So is there is there any reason not to do it? I mean, can you, you know, pursue you're pursuing this appeal and can you pursue deferred action? That could be that could be pursued, Your Honor. But we don't believe that that should factor into the government's decision. Excuse me, the court's decision, as we do believe that all of her legal rights are implicated here. And we do we do think that this case that this court should follow the Ninth Circuit precedent in Madrigal and make the immigration judges and the BIA make the distinct analysis. Explain whether they're whether there's a willingness or an inability and actually lay it out, because some of some of the discussions and arguments that we're currently having, we're having them because we're unable we're unable to understand which facts relate to which which prong of the standard. Thank you very much. Thank you. Did you have a question?
judges: Diana Gribbon Motz, Robert B. King, James A. Wynn Jr.